IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| TYLER J. THORNTON, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 05-40-KI |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| PROVIDENCE HEALTH SYSTEM - | ) | |
| OREGON, dba PROVIDENCE ST. | ) | |
| VINCENT MEDICAL CENTER, an | ) | |
| Oregon Nonprofit Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

      Sue-Del McCulloch
      710 S. W. Madison Street, Suite 400
      Portland, Oregon 97205

          Attorney for Plaintiff

      Jeffrey J. Druckman
      Janine C. Blatt
      Druckman & Blatt, P. C.
      0424 S. W. Iowa Street
      Portland, Oregon 97239

          Attorney for Defendant

Page 1 - OPINION AND ORDER

KING, Judge:

Plaintiff Tyler Thornton, a nurse at defendant Providence Health System-Oregon ("Providence"), began suffering from painful foot problems. Thornton alleges that Providence refused to accommodate him and ultimately terminated him because of his disability. Thornton alleges claims for disability discrimination under the federal and state statutes. Before the court are cross motions for summary judgment. For the reasons below, I conclude that there is a factual issue on whether Providence reasonably accommodated Thornton and deny both motions for summary judgment.

**FACTS**

Thornton began his nursing studies in 1992 and has experience as a phlebotomist, vena puncturist, nursing assistant, nursing in medical and surgical oncology, and nursing in the emergency room. He began working for Providence at the St. Vincent Medical Center in 1996. During the period at issue here, Thornton was a registered nurse assigned to the floor in the cardiovascular telemetry unit. He started having difficulty with foot pain during standing and walking in 2001 and eventually was diagnosed with plantar fasciitis.

In May 2002, Thornton first reported his foot condition to a supervisor. He asked to change his schedule so that he would not work several consecutive 12-hour shifts. Providence granted the request. The charge nurse arranged Thornton's assignments closer to his desk. Thornton found this helpful and was grateful for the change.

Thornton began exploring possible jobs at Providence that would not require him to stand. There were some part-time openings in cardiac and regular telephone triage.[1] The hiring

---

[1] The parties use the terms "telephone advice nurse" and "telephone triage nurse" interchangeably, from what I can tell. I will assume that the two terms refer to the same general

manager, Barbara Byrne, told Thornton that she could create a full-time telephone job for him in either of those areas. Byrne told Thornton that he was very suited for the position. Thornton declined the offer because the position paid less than his current floor nurse position.

Also in May 2002, Thornton discussed with Kathy Skipper, Director of Nursing Informatics and Management Systems, the possibility of working part-time in the cardiac telemetry unit and part-time in the telephone triage unit. It is unclear if Thornton ever received an offer to do this. He did not pursue it because he thought each unit would require him to work 24 hours a week.

Thornton had endoscopic plantar fascia surgeries in November and December 2002. The surgeries were not successful. After them, Thornton can only stand or walk for 10-15 minutes at a time, with pain. Thornton could no longer perform his job as a floor nurse in the cardiovascular unit, with or without reasonable accommodation, and did not ask for reinstatement to his former position. Skipper told Thornton to contact Human Resources.

In February 2003, Thornton met with Human Resources Representative Doug Patnode to discuss Thornton's medical condition, his restrictions on standing and walking, and other positions for which Thornton might apply. Thornton asked Patnode to help him identify and get a job as a registered nurse which could be done in a seated position. Patnode did not review job postings with Thornton. Patnode told Thornton to apply for positions on-line and to call Patnode if he needed assistance.

Between February and June 2003, Thornton applied for nine telephone advice nurse positions and two home health nurse positions. Thornton now agrees that he could not have met

---

type of position.

the physical requirements of the home health nurse positions. Many of the telephone positions had Byrne as the hiring manager.

The job postings for the telephone advice nurse positions all list "prior telephonic triage" in the job description. Thornton had none. He received no job offers for any of these positions and did not get a response to any of his applications until June 23, 2003. Thornton contacted Patnode several times during his job search. Thornton also asked Patnode to help him in contacting Byrne. Patnode told Thornton to keep applying to jobs on-line, that he [Patnode] was working on it, and that everything would be okay. Patnode states that he called Byrne several times to tell her "[t]hat there was an applicant by the name of Tyler Thornton who was interested in a position and making her aware of that fact." Patnode Dep. at 19.

At some point, Skipper recommended Thornton for the telephone advice nurse position as an excellent nurse who was very qualified for the position and who would be a tremendous asset and excellent addition to the department. Skipper's recommendation was a general statement made to the manager of the department and was not connected to a specific vacant position.

Providence terminated Thornton on June 10, 2003. Thornton took a job with another employer in early July 2003. Byrne called him later in July 2003 in connection with a job. Before Byrne could give Thornton any details, he told her that he had taken a position elsewhere.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to point out the absence of any genuine issue of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains an issue of fact to be tried.

Page 4 - OPINION AND ORDER

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the evidence is viewed in the light most favorable to the nonmoving party. Universal Health Services, Inc. v. Thompson, 363 F.3d 1013, 1019 (9th Cir. 2004).

**DISCUSSION**

Providence contends that Thornton's disability discrimination claims must fail because he is not a qualified individual with a disability, as is required for a person to fall within the protection of the discrimination statutes. Because Thornton had no experience as a telephone triage nurse, Providence argues that he was not qualified to fill the position. Providence contends that it has no obligation to place an employee in a position for which he does not meet the established prerequisites and qualifications and likewise has no obligation to create a position. Providence argues that its prior willingness to create a telephone position for Thornton in 2002 does not show that he was qualified for the positions he applied for in the spring of 2003. Providence also notes that it provided several accommodations to Thornton, including schedule modifications, assignments close to the nurses' desk, and the offer of a telephone job that Thornton did not accept. Providence claims that in providing these accommodations, it engaged in the required interactive process with Thornton.

Thornton contends that Providence failed to reasonably accommodate him once he could no longer perform his job. He moves for partial summary judgment on the issue. Thornton argues that he was qualified for the telephone triage nurse positions for which he applied. Thornton contends that Providence may not use its failure to reasonably accommodate his disability as evidence that he was not qualified. According to Thornton, summary judgment should not be granted because Providence has not shown that he was unable to perform the essential functions of the telephone nursing positions to which he could have been reassigned.

Page 5 - OPINION AND ORDER

The parties agree that Thornton's claim under ORS 659A.112 is analyzed under the same framework as his claim under the Americans with Disabilities Act ("ADA"). See Snead v. Metropolitan Property Casualty Insurance Co., 237 F.3d 1080, 1090-93 (9th Cir.) (*McDonnell Douglas* burden-shifting analysis applied rather than Oregon's rule because the burden-shifting analysis was federal procedural law), cert. denied, 534 U.S. 888 (2001).

To establish a prima facie case for failure to accommodate under the ADA, a plaintiff must show: (1) he is a disabled person within the meaning of the Act; (2) he is a qualified individual able to perform the essential functions of the job with reasonable accommodation; and (3) he suffered an adverse employment action because of the disability. Allen v. Pacific Bell, 348 F.3d 1113, 1114 (9th Cir. 2003).

A qualified individual is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A reasonable accommodation may include reassignment to a vacant position. 42 U.S.C. § 12111(9)(b).

> Once an employer becomes aware of the need for accommodation, that employer has a mandatory obligation under the ADA to engage in an interactive process with the employee to identify and implement appropriate reasonable accommodations. . . . The interactive process requires communication and good-faith exploration of possible accommodations between employers and individual employees, and neither side can delay or obstruct the process. . . .
>
> Moreover, we have held that the duty to accommodate is a continuing duty that is not exhausted by one effort. . . . Thus, the employer's obligation to engage in the interactive process extends beyond the first attempt at accommodation and continues when the employee asks for a different accommodation or where the employer is aware that the initial accommodation is failing and further accommodation is needed.

Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1137-38 (9th Cir. 2001) (internal quotation and citation omitted), cert. denied, 535 U.S. 1011 (2002). See also Zivkovic v. Southern California Edison Co., 302 F.3d 1080, 1088-89 (9th Cir. 2002).

For purposes of this motion, Providence does not dispute that Thornton is a disabled person under the ADA. To determine if Thornton is qualified to fill the telephone triage position, I must consider if he could perform the position with or without reasonable accommodation. Providence had an obligation to engage in the interactive process with Thornton to search for reasonable accommodations that would allow him to return to work. A possible accommodation is to consider waiving the experience requirement stated in the telephone triage job postings.

"Although consideration is given to the employer's view as to the essential functions of a job, an employer may not turn every condition of employment which it elects to adopt into a job function, let alone an essential job function, merely by including it in a job description." Morton v. United Parcel Service, Inc., 272 F.3d 1249, 1254 (9th Cir. 2001) (internal quotation omitted), cert. denied, 535 U.S. 1054 (2002).

In this situation, Byrne had offered a telephone triage position to Thornton approximately six months before he began a job search after his surgeries. Providence argues that Thornton has not proven that the positions are identical or that the position resulting in the offer had an experience requirement. The positions are described with the same general title. Many of the later openings had the same hiring manager, Byrne. Providence has provided no evidence that the positions are materially different. Thus, Thornton has raised a factual issue that he was qualified for the telephone triage positions he applied for in 2003.

Providence points to the EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act ("Guidance") to support its

Page 7 - OPINION AND ORDER

contention that it did not have to offer Thornton a telephone triage position if he was not qualified. I think the Guidance section on Reassignment better supports Thornton's arguments:

> An employee must be "qualified" for the new position. An employee is "qualified" for a position if s/he: (1) satisfied the requisite skill, experience, education, and other job-related requirements of the position, and (2) can perform the essential functions of the new position, with or without reasonable accommodation. The employee does not need to be the best qualified individual for the position in order to obtain it as a reassignment.
>
> There is no obligation for the employer to assist the individual to become qualified. Thus, the employer does not have to provide training so that the employee acquires necessary skills to take a job. . . .
>
> Example A: An employer is considering reassigning an employee with a disability to a position which requires the ability to speak Spanish in order to perform an essential function. The employee never learned Spanish and wants the employer to send him to a course to learn Spanish. The employer is not required to provide this training as part of the obligation to make a reassignment. Therefore, the employee is not qualified for this position.

Guidance, http://www.eeoc.gov/policy/docs/accommodation.html at 19.

In Example A, the unqualified employee could not speak Spanish, a skill required for the possible reassignment. Providence has not pointed to any particular skill Thornton lacked that is required to perform the telephone triage position. The general requirement of experience is a much more nebulous thing. That may explain why Byrne made the original offer to Thornton even though he had no experience in this manner of offering nursing.

The Guidance also answers the question of whether reassignment means that the employee is permitted to compete for a vacant position. "No. Reassignment means that the employee gets the vacant position if s/he is qualified for it. Otherwise, reassignment would be of little value and would not be implemented as Congress intended." Id. at 21.

From the record before me, it appears that Thornton was competing for a vacant position as would any member of the public who did not have a disability. If proven, that is an inadequate accommodation under the ADA.

I do commend Providence for granting some accommodations to Thornton while he was still performing his floor nurse job. As quoted above, however, the duty to accommodate and engage in the interactive process is a continuing one. That is particularly true here when the employee's disability worsens.

Providence also argues that because Thornton turned down the offered accommodation of a full-time telephone triage position in 2002, Providence has no continuing duty to place Thornton in subsequent positions. The ADA regulations state that "if [an] individual rejects a reasonable accommodation . . . that is necessary to . . . perform the essential functions of the position held or desired, and cannot, as a result of that rejection, perform the essential functions of the position, the individual will not be considered a qualified individual with a disability." 29 C.F.R. § 1630.9(d). I do not believe that this regulation applies to Thornton's situation. When he turned down the telephone position in 2002, Thornton was still able to perform his floor nurse position. Thus, the accommodation was not necessary to perform the essential functions of the position Thornton held at the time. Moreover, it is not clear to me that the job offer was an accommodation. Thornton competitively interviewed for the position and received the offer. There is no evidence in the record that Providence considered the offer a reassignment in the nature of a reasonable accommodation. There is also no evidence that any of Thornton's managers at the time, or Human Resources, assisted Thornton in receiving an offer for that position.

In summary, I find that Thornton has raised a factual issue that he was a qualified individual with regard to the telephone triage positions and likewise has raised a factual issue that Providence failed to accommodate him by failing to engage in a sufficient interactive process. An unlawful discharge claim under the ADA is often, "from a practical standpoint," the same as a failure to accommodate claim because the consequence of the failure to accommodate is frequently an unlawful termination. Humphrey, 239 F.3d at 1139. Here, Thornton's termination is intertwined with whether Providence reasonably accommodated him. Thus I deny Providence's motion. I also deny Thornton's motion because I do not think he has proven a failure to accommodate as a matter of law. A jury will make that decision.

## CONCLUSION

Defendant's Motion for Summary Judgment (#30) is denied. Plaintiff's Motion for Summary Judgment (#44) is denied.

IT IS SO ORDERED.

Dated this     5th     day of December, 2005.

       /s/ Garr M. King
       Garr M. King
       United States District Judge